Bob LEONARD, Charles Cannon,
Dennis Thompson, and Gary
Naylor, Appellants,

v.

IOWA STATE BOARD OF EDUCATION;
Lamoni Community School District;
Lamoni Community School Board;
William Juhnke, Carol Hough, Gloria
Salsman, Linda Green, as Members of
Said School Board; and Superintend-
ent David Clinefelter, Appellees.

Nos. 90–916, 90–917.

Supreme Court of Iowa.

June 19, 1991.

Carol A. Clark, Lamoni, for appellants.

Bonnie J. Campbell, Atty. Gen., and Christie J. Scase, Asst. Atty. Gen., for appellee Iowa State Board of Educ.

John R. Phillips and Frank B. Harty of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellees Lamoni Community School District, Lamoni Community School Board, William Juhnke, Carol Hough, Gloria Salsman, Linda Green, and David Clinefelter.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, NEUMAN, and ANDREASEN, JJ.

HARRIS, Justice.

These appeals are from decisions on judicial review of two hotly contested administrative determinations. In each case the district court determined that, under the rules which rigidly control our review of administrative decisions, it would be inappropriate to interfere with the ones challenged here. We agree.

I. Administrative law's most fundamental tenet, codified in Iowa Code section 17A.19(8) (1991), is that administrative decisions are to be made by the agencies, not the courts. Although we are frequently called upon to consider appeals from judicial review decisions under Iowa Code section 17A.20, court interference with any agency determination is extremely rare. We have said:

> Under the administrative law scheme nearly all disputes are won or lost at the agency level. Our review of agency action under Iowa Code section 17A.20 is carefully confined to the correction of errors of law. We apply the standards

outlined in Iowa Code section 17A.19(8). The burden rests squarely on the challenger to show that an agency's policy choices were unreasonable; we defer readily to the agency's expertise.

*Iowa–Illinois Gas & Elec. v. Iowa State Commerce Comm'n,* 412 N.W.2d 600, 604 (Iowa 1987).

Court interference with agency action is warranted only under the limited grounds specified in Iowa Code section 17A.19(8) (violating statute or constitution, exceeding agency's statutory authority, violating agency rule, unlawful procedure, error of law, finding facts unsupported by substantial evidence, acting arbitrarily, capriciously, or abusing discretion). Because these statutory grounds mark the parameters of a reviewing court's authority to interfere with agency action, challenges on judicial review are necessarily couched in the words of section 17A.19(8). A survey of our many cases will however disclose that the contentions usually do not amount to a statutory ground. An assertion of a statutory violation is nearly always a disagreement on the merits.

Administrative tribunals were established in order to transfer from the courts to an agency the authority to resolve disputes in an area in which the agency is presumed to have expertise superior to the court's. The "hands off" policy of the courts in reviewing agency determinations recognizes that judicial second-guessing of agency wisdom would destroy the fabric of administrative law and render its operation largely meaningless and therefore an extravagant waste of both public and private funds.

These elementary fundamentals should be borne in mind in cases, such as the present ones, where feelings on the merits of administrative controversies are so strong that they tend to blur the line between the merits of a dispute and the legality of an agency decision resolving them.

These two appeals involve the same parties. Plaintiffs are taxpayers in the Lamoni school district who unsuccessfully challenged two actions taken by the school district in agency proceedings before the Iowa board of education.

■ II. In one dispute (No. 90–916) plaintiffs challenge a local school policy which they insist allows school property to be used for the private interests of Dr. David Clinefelter, the school superintendent. Clinefelter began developing a curriculum classification system (Annehurst Curriculum Classification System—hereinafter referred to as ACCS) as part of his doctoral dissertation in the late 1970s. His associate is his former professor. ACCS is an Iowa corporation. The corporation by-laws provide that ten percent of the net profit is to go to the Lamoni school, ten percent to an educational fraternity, and the remaining eighty percent of profit to research and development in the subject area of student individual differences.

ACCS is a computer-based system for classifying nontextbook curricular materials. In addition to providing indexing for these articles according to author, title, and subject, the system provides classification of curriculum materials in terms of intellectual quality, motivational properties, perceptual skills, creativity evoked on the part of the student, and a level of auditory perception of visual skills utilized. ACCS serves to make resource materials more readily identifiable by teachers and to assist teachers in finding materials suited to the skills, needs, and interests of individual students.

There was certainly nothing clandestine about the project. Before being hired in 1982 Clinefelter disclosed his work on ACCS to the board and kept the local board informed of its progress. ACCS donated a complete system to the Lamoni school district in 1989. Neither Clinefelter nor his associate realized any monetary profits from their participation in ACCS.

Clinefelter stored certain magazines and other articles for inclusion in the computer directory in a storeroom at the school. He brought his personal computer to school to work on the classification of materials, which was done primarily on evenings and weekends, but occasionally during regular working hours. Clinefelter hired several

persons, including some school employees, on a part-time basis. These employees were compensated either by Clinefelter or by ACCS. On at least one occasion Clinefelter submitted a printing request for ACCS with a number of school printing requests. There was no cost to the district; Clinefelter reimbursed the school with ACCS funds.

Other activity associated with the school included a separate phone line to be used solely for ACCS which was installed in Clinefelter's office. It was not connected to any of the school district's lines. ACCS pays the phone bill for that line. In the Lamoni telephone directory, ACCS is listed with Clinefelter's school district office address. Clinefelter often made "pitches" for ACCS during seminar speeches where the district would pay travel expenses. The trips would always coincide with specific duties relating to his job as superintendent.

Plaintiffs believe the school's policy allowing its superintendent to conduct the foregoing enterprise violated article III section 31 of the Iowa Constitution (prohibits use of public money or property for private purpose), Iowa Code section 297.9 (allows but limits use of schoolhouse and grounds), and its own board policy number 100.2 (allows use of facilities by profit organizations where educational benefit outweighs promotional purpose).

The board found no violation of any of these provisions because of the educational nature of the enterprise and the benefit derived by the district. We find no cause, on these facts, to interfere with this determination.

To be sure, it is an extraordinarily delicate matter to balance the practical and real educational benefit to the public against the incidental private advantage which might accrue to the enterprise by reason of its presence on school property. It seems that the local board and the superintendent struck that balance with utmost care. They went to great pains to extend an educational advantage to the district, and to protect against the expenditure of any public funds on the enterprise. Some

might contend the challenged policy was unwise. We cannot find it was illegal.

■ III. In the other case (No. 90–917) the plaintiffs contend the local board promoted (though unsuccessfully because the issue failed to pass) a "yes" vote on a school bond issue. The state board of education determined the local board had not done so, and on judicial review the plaintiffs insist the finding was not supported by substantial evidence. In other words plaintiffs contend they established their factual contention as a matter of law.

The state board assumed without holding that it is improper for a local board to endorse a "yes" vote on a school bond issue, though authority does exist for such a board to expend public funds to disseminate information to the public concerning the reasons for construction, needs, plans, and anticipated costs. This view of the powers of local school boards is derived, not directly from any statute or administrative rule, but from two opinions of the Iowa attorney general. 1982 Op. Iowa Att'y Gen. 423; 1980 Op. Iowa Att'y Gen. 726. On appeal the parties do not dispute that these opinions are accurate statements of the law. Like the state board, we assume without holding this is true.

By written contract the Lamoni school board retained an Omaha, Nebraska, educational consulting firm to undertake a three-phase project: (1) assessment of need for facilities; (2) if renovation or construction was found necessary, to present a public bond issue; and (3) if the bond issue was approved, to solicit bids and oversee the building project. A $12,000 fee was paid to the consulting firm. Plaintiffs assert the contract was void and that payment of the fee was improper. The third phase was not undertaken because the bond issue was not passed.

At the firm's suggestion separate citizen's committees were formed, at least one of which did actively promote the bond issue. It would stretch credulity to assume that the Lamoni school board members had no private beliefs favoring the bond issue, or that the voters in the district were igno-

rant of that fact. This however did not, in itself, amount to promoting a "yes" vote.

It was easily within the province of the state board to find the local board limited its official activities to disseminating information. The record is far short of establishing plaintiff's factual contentions as a matter of law.

AFFIRMED ON BOTH APPEALS.